# MICHIGAN CENTRAL RAILROAD COMPANY v. KOSMOWSKI.

[No. 9,689. Filed January 28, 1919. Rehearing denied May 9, 1919.]

1. APPEAL.—*Assignment of Errors.—Matters Assignable.—Refusal to Direct Verdict.*—Errors assigned on the refusal of the trial court to direct a verdict present no question for review on appeal. p. 147.

2. RAILROADS.—*Crossing Accidents.—Complaint.—Sufficiency.—Contributory Negligence.*—In an action against a railroad for injuries sustained by the driver of a wagon in a crossing accident, complaint containing general averment of freedom from fault on the part of plaintiff, *held* sufficient against the objection that it showed plaintiff to have been guilty of contributory negligence. p. 153.

3. RAILROADS. — *Crossing Accidents. — Complaint. — Sufficiency. — Proximate Cause.*—In an action against a railroad company for injuries sustained by a wagon driver in a crossing accident, complaint containing allegation that plaintiff was injured by reason of defendant's negligence in running its train in violation of a speed ordinance and in failing to sound whistle or bell, *held* sufficient as against the objection that defendant's negligence is not shown to be the proximate cause of the injury.  p. 153.

4. RAILROADS. — *Crossing Accidents. — Contributory Negligence.* — Where the driver of a team and wagon approached a railroad crossing at the speed of three miles an hour, but, though looking carefully, was unable, because of the numerous headlights, switchlights, etc., to discover a train approaching at a speed of seventy miles an hour until his horses were about to enter on the track, when he attempted to stop the horses and back them out of danger, but failed because they suddenly lunged forward and across the track, he was not, as a matter of law, negligent. p. 154.

5. APPEAL.—*Review.—Refusal to Direct Verdict.*—In an action against a railroad for injuries sustained in a crossing accident, instructions directing a verdict for defendant were properly refused where it was clearly established that the train at the time of the accident was running at a much greater speed than allowed by municipal ordinance, and where, under the evidence, the question of plaintiff's negligence and proximate cause was for the jury.  p. 154.

6. RAILROADS.—*Crossing Accidents.—Action.—Instructions.—Ignoring Issues.*—In an action against a railroad for injuries to person and property sustained in a crossing accident, requested instruc-

VOL. 70—10

tions omitting the element of injury to plaintiff and limited to the damage to property were properly refused. p. 155.

7. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Burden of Proof.*—In an action against a railroad for personal injuries sustained in a crossing accident, plaintiff did not have the burden of showing want of due care on the part of defendant. p. 155.

8. RAILROADS. — *Crossing Accidents. — Negligence. — Violation of Speed Ordinance.—Instructions.*—In an action against a railroad for injuries sustained in a crossing accident, an instruction that the operation of a train at a rate of speed forbidden by city ordinance was "ordinarily" negligence was properly refused, since the violation of an ordinance is negligence *per se.* p. 155.

9. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Instructions.*—In an action against a railroad for injuries to person and property sustained in a railroad crossing accident, an instruction relating principally to the subject of damage to property, but telling the jury that plaintiff was required to prove that the damage occurred without any fault or negligence on his part, was correctly refused as being misleading, the instruction not being limited to a recovery for personal property. p. 155.

10. APPEAL.—*Review.—Instructions. — Invited Error. —* Appellant cannot complain that instructions were erroneous as not being warranted by the evidence, where such instructions were invited by others on the same subject tendered by appellant. p. 156.

11. RAILROADS.—*Crossing Accidents.—Action.—Evidence.*—In an action against a railroad for injuries sustained in a crossing accident, evidence that the engines of defendant railroad and those belonging to another railroad using the same track had both the names of a railroad system and the initials of the railroad to which they belonged painted on them, was admissible under an allegation that such railroads were being operated under the system named on defendant's engines. p. 156.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Action by Stantislaus Kosmowski against the Michigan Central Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Winston, Payne, Strawn & Shaw, L. V. Cravens, Edward W. Everett* and *Ibach, Gavit, Cravens & Stinson,* for appellant.

*Crumpacker & Crumpacker,* for appellee.

McMahan, J.—This action was brought by the appellee to recover damages for injuries to his person, and to certain personal property, alleged to have been received on account of a collision between one of appellant's locomotives and appellee's horses and wagon.

The complaint originally consisted of two paragraphs. A demurrer for want of facts, filed to this complaint as a whole, was overruled, and exception reserved by appellant.

Later appellee filed an amended first paragraph of complaint and also a third paragraph of complaint. A separate and several demurrer for want of facts was then filed to said amended first paragraph and to the third paragraph of complaint. Answer filed, trial by jury, followed by a verdict for appellee. Motion for a new trial, filed by appellant, was overruled, and was followed by a judgment for appellee.

The errors assigned are six in number. The first and third are waived. The fourth and fifth relate to the refusal of the court to direct a verdict, and for that reason present no question. The second error assigned challenges the action of the court in overruling appellant's demurrers to each paragraph of complaint, while the sixth is that the court erred in overruling appellant's motion for a new trial.

The complaint in this case is very lengthy. The amended first paragraph alleges that the appellant is, and for years has been, a corporation operating a line of railway from Chicago, Illinois, to the city of Detroit, Michigan, and passing easterly through the city of Hammond, in Lake county, Indiana; that in the eastern part of Hammond it crosses Kennedy

avenue, a public street, at right angles; that about 300 feet west of said crossing is a depot, roundhouse and railroad yards, which are used by the appellant in conjunction with the Chicago, Indiana and Southern Railway Company and the Indiana Harbor Belt Railroad Company; that these three railroad companies, for more than five years, had been operating their railroads in conjunction with each other under a system known as the New York Central Lines; that the roundhouse had stalls for about thirty-five engines, with windows in the front part and in front of the engines; that the said three railroads constantly run engines in and out of this roundhouse, night and day, and that in so doing the engines throw a strong light through the windows so they can be plainly and distinctly seen at said crossing and south along said highway for several hundred feet; that the railroad yards extend westward two and a half miles along the south side of appellant's main line, there being about fifty parallel tracks in said yards and which are used for switching purposes and in making up trains for all the several railroads; that engines are being constantly used in said yards, and that the headlights thereon can be plainly seen at said Kennedy avenue crossing and for a distance of a quarter of a mile south thereof; that there is another and secondary railroad yard running from said station southwesterly to another station about one mile and to the Chicago, Indiana and Southern Railroad; that there are many boarding and lodging houses, hotels and repair shops near said station, and that 1,500 men are employed in and around said yards and shops; that there is along the appellant's railroad, and commencing about 200 feet west of Kennedy avenue, at and

around said station and switchyards and extending westward two and a half miles, a labyrinth of switch lights, head lights, signal lights and semaphore lights, which constantly reflected their lights in almost every direction; that the main line of the Chicago, Indiana and Southern Railroad crossed the main line of appellant at an acute angle at a point about 500 feet west of Kennedy avenue; that the Belt Railroad uses the main line of said Chicago, Indiana and Southern Railroad across the appellant's line, and that many engines run over and across the said crossing during the night, and that a traveler on said Kennedy avenue can scarcely distinguish between a headlight on appellant's main line and a headlight on the railroads crossing appellant's line, or from the head lights in the switchyards, or from engines in the roundhouse; that Kennedy avenue at that point had, for years, been the main traveled highway from Chicago, Illinois, Whiting, Indiana Harbor and East Chicago to the south, and also was the only direct route between Chicago and the city of Gary, and was much used by the public both day and night, and had been so used with the knowledge of appellant for more than five years; that appellant's crossing target and switchhouse is within 500 feet of said street crossing and in plain view of the same, and has for years been occupied and operated by appellant's servants both day and night; that no lights were maintained by appellant or by the city of Hammond at said crossing; that when the headlights shone from the west, they lighted said Kennedy avenue crossing so that the appellant's employes in charge of and operating the target at the railroad crossing could see a person, team, or wagon approaching from the south on Kennedy avenue a distance of 100 feet.

Plaintiff alleges that about one o'clock at night he was traveling north on said street with a team of horses and a wagon, and, when about ninety feet south of said crossing, he saw several headlights to the west and southwest, which seemed to be approaching; that he was not very well acquainted with the locality, and stopped his team to look and observe the surroundings and approaching danger, if any; that some of the headlights seemed to be receding westerly, some stationary, and some coming toward the east; that one was on an engine attached to a freight train that was crossing the defendant's main line on the Chicago, Indiana and Southern track; that this freight train made much noise, and whistled several times, and that the engines operating in the yards occasionally whistled; that the headlights and other lights near said crossing lighted the same so that the appellant's railroad could be plainly seen by plaintiff at said crossing, and that the plaintiff's horses and wagon could be plainly seen from the target house of the appellant, which was located a short distance west of Kennedy avenue; that said freight train when crossing appellant's main line shut out the light and view to the westward thereof along appellant's tracks; that appellee looked both ways, up and down the appellant's tracks, but did not see nor hear any train or engine or cars approaching Kennedy avenue crossing, and that he could not see and did not know of the approach of any, and believing it was safe for him to cross, proceeded north along said street; that when he reached a point about forty to forty-five feet of the appellant's track, he looked to the west and the freight train had not yet entirely crossed over appellant's railroad, and that he then turned and

looked east to see if any train was coming from that direction, and that he could not see nor hear any on appellant's tracks, and did not know any was approaching; that while he was so looking and listening his team of horses and wagon in which he was riding was approaching appellant's railroad at said crossing, and that as his horses were about to enter on the said railroad track he again looked to the west and saw an engine and a train of cars approaching from the west on appellant's tracks, and which seemed to be several hundred feet away and coming toward him; that he could not judge of its speed but believed it was going much slower than it really was; that at this time he attempted to stop his horses and back them out of danger, but that they suddenly lunged forward and the train was approaching at such lightning-like speed that he did not realize his danger until it was on him, and he could do nothing to avert the danger and injury, and that until the train got very near to him he could not see and did not realize that it was going at a speed of seventy miles an hour; that plaintiff, until his horses started with a lunge, was going at a speed of no more than three miles an hour; that he could not hear the approach of the train on account of the noise of other engines, etc., and that he did not and could not, by the exercise of ordinary care, discover and know appellant's headlight on the approaching train, or that appellant's train that struck him was coming at such high speed, but that he believed it would run its train within the limits prescribed by the ordinance of the city of Hammond, and according to the laws of Indiana.

It is further alleged that the appellant did not ring the bell nor sound the whistle as the train approached

Michigan Central R. Co. *v.* Kosmowski—70 Ind. App. 145.

the crossing, and did not give any notice of the ap-
proach of the train; that appellant's servants in
charge of said train could and did see plaintiff and
his perilous position, at a point when they were 800
feet west of said crossing, and that the agents of the
appellant in the target house 500 feet west of said
crossing could and did see him and his horses from
the time he was 100 feet of the crossing and until he
was struck, and that such agents in the target house
could and did see the train that struck appellee from
a point one-half mile west of said crossing to the
time it struck him, and that such servants, by exercis-
ing due care, could have prevented appellee being in-
jured; that the persons in charge of appellant's said
engine and train saw, or, by the use of due diligence,
could and might have seen, plaintiff and his perilous
position and danger to him in time to have slackened
and slowed down said engine and train and avoided
any injury to plaintiff, but that they negligently failed
to do so, and that the servants in said target house
failed to use due diligence in that behalf.

It is also alleged that there was an ordinance in
force in the city of Hammond limiting the speed of
all railroad trains to a speed of not over six miles
an hour, and that appellant was running its train in
violation of such ordinance by running it over seventy
miles an hour, and that the injury and damages com-
plained of would not have occurred if appellant had
run its train according to the provisions of said ordi-
nance; that, if appellant had run its engine and train
in accordance with said city ordinance, it might and
could have stopped the same, and the injury to plain-
tiff and his property would not have occurred; that
the appellant recklessly and negligently failed to com-
ply with said ordinance and to put said engine and

cars under proper control; that the said train struck the appellee's horses and wagons and injured him and killed his horses and damaged his wagon; that he was not guilty of contributory negligence, but that the injuries and damages were caused wholly on account of the negligence of appellant, and prays judgment for the alleged injuries to his person and personal property.

The third paragraph is, to all intent and purpose, the same as the first.

The second paragraph, although much shorter and more concise than the other two paragraphs, contains about the same allegations, except that nothing is alleged as to the plaintiff's perilous position.

The sufficiency of each paragraph of the complaint is challenged on the theory that plaintiff is shown to have been guilty of contributory negligence, 2-3. and because the negligence of the appellant is not shown to be the proximate cause of the injury. Neither of these objections can prevail.

Each paragraph of complaint contains a general allegation of freedom from fault on the part of the appellee, and that he was injured by reason of the negligence of appellant in running its train in violation of the speed ordinance and in failing to sound its whistle or bell, and that, in addition to the injury to his person, his property was also injured and destroyed. An allegation of this character, when nothing is shown by specific averment which negatives or destroys its effect, has always been held sufficient in this state. *Baltimore, etc., R. Co.* v. *Young* (1896), 146 Ind. 374, 45 N. E. 479; *Delaware, etc., Tel. Co.* v. *Fleming* (1913), 53 Ind. App. 555, 102 N. E. 163.

In addition to the foregoing objections the appellant also contends that the demurrer to the amended first and to the third paragraphs of complaint should have been sustained, because the negligence of the appellant and the appellee was concurrent, and also because the act of the engineer in running the train in excess of the speed ordinance preceded the negligent act of the appellee in getting in a perilous position.

In so far as the additional objections are concerned, it is sufficient reply to say that neither of these paragraphs disclose such a state of facts that the court can say, as a matter of law, that the appellee was negligent, and this is true whether the rule of the last clear chance is invoked or not.

The demurrer to each paragraph was properly overruled.

Error has been assigned in refusing to give the jury certain instructions requested by appellant and in giving certain others on the court's own motion. Instruction No. 1, tendered, directed a general verdict for appellant, while Nos. 2 and 3 directed a verdict to appellant on the amended first and on the second paragraphs of complaint.

The violation of the speed ordinance was clearly established by the evidence. The engineer and fireman on the train both testified that the train, at the time of the accident, was running five or six times as fast as was authorized by the ordinance, and under the evidence the negligence of the appellee and the proximate cause was a question for the jury. The court correctly refused to give instructions Nos. 1, 2 and 3.

Instructions Nos. 7 and 46, tendered, were to the

effect that before plaintiff could recover it must appear from the evidence: First, that the defendant was negligent in some one or more particulars alleged in the complaint; second, that such negligence wholly caused the accident; third, that plaintiff was not guilty of contributory negligence; fourth, that the plaintiff suffered damages to his property by reason of the negligence of defendant, and that the burden was on plaintiff as to all of said matters, and, if any one or more of said things is not shown by the evidence, the verdict must be for the defendant. These instructions omitted the element of injury to the plaintiff, and were limited to damage to his property, and were properly refused. Had they been confined to the second paragraph of complaint, a different question would be presented. The burden of showing want of care did not rest with the plaintiff, in so far as the question of injury to his person was concerned. Instruction No. 10, tendered, told the jury that a rate of speed forbidden by a city ordinance was *ordinarily* negligence, and that such negligence would not excuse a person who assumes the risk of crossing in front of a train which he knows is approaching. The violation of such an ordinance is negligence *per se*. This instruction was properly refused for that reason, if not for the further reason that it omitted the element of reasonable care on the part of the plaintiff. Instruction No. 11, given by the court, correctly instructed the jury on this subject.

Instruction No. 12, tendered by appellant, is misleading. The general subject covered by it is injury to property, yet the jury is told in one part of it that, "before he (plaintiff) can recover on account of injuries at a railroad crossing, he

must prove, by a preponderance of evidence, that the damage occurred without any fault or negligence on his part.'' This instruction, not being limited to personal property, was correctly refused. The court fully and correctly covered this subject in the instructions given.

The appellant urges that instruction No. 33 should have been given on the theory that the target operator was not working for appellant, and therefore owed appellee no duty. This target man was called as a witness, and testified that he was working for all three of the railroads at the time of the accident. We have examined all instructions which appellant claims should have been given, and do not find any reversible error.

We have carefully examined all the instructions given by the court to which any objection is made, and think they correctly state the law, and we see no objection to any of them.

Objection is made to the giving of instructions Nos. 6 and 14, on the ground that there was no evidence introduced which authorized the court in submitting the doctrine of the last clear chance to the jury. Appellant, in tendering its instruction No. 26, invited the court to instruct on this doctrine, and is therefore not in a position to complain. *Terre Haute, etc., Traction Co.* v. *Frischman* (1914), 57 Ind. App. 452, 107 N. E. 296.

The only other assignment of error is that the court erred in permitting witness Murden to testify that the engines of the Michigan Central and the Chicago, Indiana and Southern Railroad Companies both had the words ''New York Central Lines'' on them, and that the Michigan Cen-

tral engines also had the letters ''M. C.'' on them, and the other company's engines had the letters ''C. I. & S.'' on them. It will be remembered that the complaint alleged that the railroads mentioned were being operated under a system known as the New York Central Lines. This evidence was proper; the weight of it was for the jury. We find no reversible error in the record.

Judgment affirmed.